**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| **MARK BROWNE**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**CORECIVIC, INC.**, a Maryland corporation,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No. 5:26-cv-576** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, MARK BROWNE ("BROWNE" or "Plaintiff"), by and through undersigned counsel, sues Defendant, CORECIVIC, INC., a Maryland corporation ("CORECIVIC" or "Defendant"), and states:

**CAUSES OF ACTION**

1. This is an action brought under Florida's Private Whistleblower Act ("FWA"), Florida's Public Whistleblower Act ("PWA"), and the Employee Retirement Income Security Act of 1974 ("ERISA"), including ERISA's COBRA notice provisions, for retaliation and failure to provide legally required continuation-coverage notice.

## PARTIES

2. Plaintiff MARK BROWNE is an individual and resident of Florida. Plaintiff resides in Floral City, Florida.

3. Plaintiff was employed by Defendant in Lecanto, Florida. At all material times, Plaintiff performed work at Citrus County Detention Facility in Lecanto, Florida, which is located in Citrus County and within the Middle District of Florida, Ocala Division.

4. Plaintiff worked for Defendant as a full-time Facility Investigator beginning in January 2023.

5. Plaintiff's employment ended when Defendant terminated him on April 22, 2026.

6. Defendant CORECIVIC, INC. is a Maryland corporation that operated, managed, staffed, or controlled Citrus County Detention Facility in Lecanto, Florida.

7. Defendant employs approximately 10,000 employees.

8. At all material times, Defendant was Plaintiff's employer within the meaning of the FWA.

9. At all material times, Defendant was an independent contractor and/or a person or entity performing correctional or detention services under contract with a public agency within the meaning of the PWA.

10. At all material times, Defendant was an employer, plan sponsor, plan administrator, and/or COBRA administrator within the meaning of ERISA and COBRA because it sponsored, maintained, administered, or controlled an employee welfare benefit plan providing group health coverage to Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under ERISA.

12. This Court has supplemental jurisdiction over Plaintiff's Florida statutory whistleblower claims under 28 U.S.C. § 1367 because those claims arise from the same employment relationship, adverse employment action, and course of retaliatory conduct as Plaintiff's federal claims.

13. Venue is proper in the United States District Court for the Middle District of Florida, Ocala Division, because Plaintiff worked at Citrus County Detention Facility in Lecanto, Florida; Defendant conducts business in this District; some or all of the events giving rise to Plaintiff's claims occurred in this District; and the events giving rise to Plaintiff's claims occurred primarily in Citrus County, Florida.

14. Plaintiff has satisfied all conditions precedent to bringing this action, or such conditions have been waived, excused, or are inapplicable.

## GENERAL ALLEGATIONS

15. Plaintiff began working for Defendant in January 2023 as a Facility Investigator.

16. Plaintiff worked full-time and earned approximately $57,000 to $60,000 annually.

17. Plaintiff performed his assigned duties in a professional manner and was well qualified for his position.

18. Plaintiff received good performance reviews, received a $1,000 performance bonus, did not receive negative feedback before his termination, and had not been subject to disciplinary action before his termination.

19. Plaintiff's job duties included investigating and preventing the introduction of drugs, contraband, and other illegal items into Citrus County Detention Facility.

20. Plaintiff's job was to prevent drugs and contraband from entering the facility.

21. Plaintiff could not effectively perform those duties without support from Defendant's management and supervisory personnel.

22. Plaintiff informed facility managers and his supervisor that drugs and contraband were entering the facility and that he could not properly prevent that conduct without management's help.

23. Defendant's managers and supervisors did not correct the problem.

24. Plaintiff reported that some facility personnel benefited from the contraband activity.

25. Defendant's failure to prevent drugs and contraband from entering a detention facility created and presented a substantial and specific danger to the health, safety, and welfare of detainees, inmates, employees, law enforcement personnel, and the public.

26. Defendant's conduct, policies, and practices implicated violations of laws, rules, and regulations governing detention facilities, contraband, drugs, public safety, criminal conduct, and the safe operation of correctional or detention institutions.

27. In August 2025, Plaintiff went to the Sheriff's Department regarding the contraband issues.

28. The Sheriff's Department asked Plaintiff to serve as an informant, and Plaintiff accepted and signed an NDA with the Sheriff's Department.

29. By serving as an informant for the Sheriff's Department, Plaintiff opposed Defendant's illegal activities, policies, and practices within the meaning of the FWA, including Defendant's failure to prevent and address drugs, contraband, and unlawful conduct at Citrus County Detention Facility.

30. By serving as an informant for the Sheriff's Department, Plaintiff also provided information to, cooperated with, and participated in a law enforcement investigation within the meaning of the PWA.

31. Plaintiff provided information to law enforcement regarding suspected illegal activity, including the introduction of drugs and contraband into Defendant's facility.

32. Plaintiff assisted law enforcement with drug and contraband investigations at Defendant's private jail operated by CoreCivic.

33. Plaintiff's communications and cooperation with law enforcement constituted protected activity under Florida law.

34. The Sheriff's Department later arrested employees who were cooperating in the contraband activity.

35. Those arrests occurred on March 30, 2026.

36. Defendant knew Plaintiff had engaged in protected activity.

37. Sheriff's personnel went into Plaintiff's office and had constant contact with him.

38. Defendant's management and decisionmakers knew Plaintiff was cooperating with law enforcement because of Plaintiff's visible and repeated contact with Sheriff's personnel at Citrus County Detention Facility.

39. Plaintiff was terminated on April 22, 2026, less than one month after the March 30, 2026 arrests.

40. Plaintiff was terminated approximately three weeks after assisting law enforcement with drug and contraband investigations at the private correctional facility.

41. Defendant terminated Plaintiff because of his protected disclosures, objections, and participation in law enforcement investigations.

42. Plaintiff had healthcare coverage through Defendant at the time Defendant terminated his employment.

43. Plaintiff's termination was a qualifying event under COBRA.

44. Defendant was required to provide Plaintiff with timely notice of his right to continue group health coverage under COBRA.

45. Defendant never sent Plaintiff a COBRA election notice.

46. Defendant's failure to provide COBRA notice deprived Plaintiff of information necessary to elect continuation coverage and protect his health insurance rights after termination.

**COUNT I - VIOLATION OF FLORIDA STATUTE § 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT**

47. Plaintiff incorporates by reference Paragraphs 1 through 46 as though fully set forth herein.

48. Plaintiff was an employee of Defendant, a private company.

49. At all material times, Plaintiff was protected from retaliatory personnel action under Florida's Private Whistleblower Act.

50. Plaintiff engaged in protected activity by objecting to and reporting Defendant's illegal practices concerning drugs, contraband, and unsafe or unlawful conduct at Citrus County Detention Facility.

51. Plaintiff informed facility managers and his supervisor that drugs and contraband were entering the facility and that management was not helping him prevent it.

52. Plaintiff reported that some facility personnel benefited from the contraband activity.

53. Plaintiff's reports and objections concerned activities, policies, and practices of Defendant that violated laws, rules, and regulations governing detention facilities, contraband, drugs, criminal conduct, public safety, and workplace safety.

54. Plaintiff further engaged in protected activity by opposing Defendant's illegal conduct through his cooperation with the Sheriff's Department as an informant.

55. Plaintiff went to the Sheriff's Department in August 2025.

56. Plaintiff accepted the Sheriff's Department's request to serve as an informant and signed an NDA with the Sheriff's Department.

57. Plaintiff assisted law enforcement with drug and contraband investigations.

58. Defendant had actual knowledge of Plaintiff's protected activity.

59. Sheriff's personnel went into Plaintiff's office and had constant contact with him.

60. Shortly after Plaintiff engaged in protected activity and law enforcement arrested employees involved in the contraband activity, Defendant terminated Plaintiff.

61. The Sheriff's Department arrested employees who were cooperating in the contraband activity on March 30, 2026.

62. Defendant terminated Plaintiff on April 22, 2026.

63. Plaintiff was terminated approximately three weeks after assisting law enforcement with drug and contraband investigations.

64. Plaintiff's protected activity and Defendant's termination of Plaintiff are causally related.

65. Defendant terminated and retaliated against Plaintiff because he objected to, disclosed, and refused to participate in illegal conduct, policies, and practices.

66. As a direct and proximate result of Defendant's violations of the FWA, Plaintiff lost wages, benefits, employment opportunities, and other privileges of employment.

67. As a direct and proximate result of Defendant's violations of the FWA, Plaintiff suffered emotional distress, humiliation, loss of career path, and other compensable damages.

WHEREFORE, Plaintiff demands judgment against Defendant for violation of Florida's Private Whistleblower Act, including all relief available under Florida law, including but not limited to reinstatement or front pay, back pay, lost wages, lost benefits, compensatory damages, attorney's fees, costs, interest, and such other relief as this Court deems just and proper.

## COUNT II - VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER ACT

68. Plaintiff incorporates by reference Paragraphs 1 through 46 as though fully set forth herein.

69. Defendant is an independent contractor and/or covered entity within the meaning of Florida's Public Whistleblower Act because Defendant operated Citrus County Detention Facility and performed detention, correctional, or public-safety-related services pursuant to a contract, agreement, or relationship with a governmental agency.

70. Plaintiff was an employee within the meaning of the PWA because he performed services for and under the control and direction of Defendant for wages or other remuneration.

71. In the alternative, Plaintiff was a person protected by the PWA.

72. Plaintiff was qualified for the Facility Investigator position he held with Defendant.

73. Plaintiff received good performance reviews, received a $1,000 performance bonus, and did not receive negative feedback before his termination.

74. During his employment, Plaintiff became aware of actual and suspected violations of law, rules, and regulations committed by employees, agents, and/or representatives of Defendant.

75. Those violations involved the introduction, facilitation, or tolerance of drugs and contraband within Citrus County Detention Facility.

76. Those violations created and presented a substantial and specific danger to the public's health, safety, and welfare.

77. Plaintiff reported that employees at the facility were allowing drugs and contraband to enter the facility.

78. Plaintiff reported that some facility personnel benefited from the contraband activity.

79. Plaintiff engaged in protected activity by disclosing actual and suspected violations to the Sheriff's Department, an appropriate governmental agency or entity with authority to investigate, police, manage, and remedy such violations.

80. Plaintiff went to the Sheriff's Department in August 2025 and reported the contraband issues.

81. Plaintiff accepted the Sheriff's Department's request to serve as an informant and signed an NDA.

82. Plaintiff also engaged in protected activity by providing information to, cooperating with, and participating in a law enforcement investigation into Defendant's illegal practices.

83. Plaintiff assisted law enforcement with drug and contraband investigations at Defendant's private correctional facility.

84. Plaintiff's disclosures and participation concerned unlawful activities and violations that created substantial and specific dangers to public health, safety, and welfare.

85. Defendant had actual knowledge of Plaintiff's protected activity.

86. Sheriff's personnel went into Plaintiff's office and had constant contact with him.

87. Defendant retaliated against Plaintiff by terminating his employment.

88. Defendant terminated Plaintiff on April 22, 2026.

89. Plaintiff's protected activity was the proximate cause of Defendant's adverse employment action.

90. The Sheriff's Department arrested employees involved in the contraband activity on March 30, 2026, and Defendant terminated Plaintiff less than one month later.

91. Instead of addressing Plaintiff's complaints and cooperating with the investigation into illegal conduct, Defendant retaliated against Plaintiff by terminating his employment.

92. Defendant's acts, failures to act, practices, and policies constitute retaliation in violation of Florida's Public Whistleblower Act.

93. As a direct and proximate result of Defendant's violations of the PWA, Plaintiff lost employment, wages, benefits, employment opportunities, and other privileges of employment.

94. As a direct and proximate result of Defendant's violations of the PWA, Plaintiff suffered humiliation, emotional distress, mental anguish, and other compensable damages.

WHEREFORE, Plaintiff requests trial by jury on all issues so triable as of right and demands judgment against Defendant for violation of Florida's Public Whistleblower Act, including but not limited to injunctive relief, reinstatement or front pay, back pay, lost benefits, compensatory damages, declaratory relief, attorney's fees, costs, interest, and such other relief as this Court deems just and proper.

## COUNT III - ERISA / COBRA: FAILURE TO PROVIDE COBRA ELECTION NOTICE

95. Plaintiff incorporates by reference Paragraphs 1 through 46 as though fully set forth herein.

96. Defendant established, sponsored, maintained, administered, or controlled an employee welfare benefit plan providing group health coverage to eligible employees, including Plaintiff.

97. The group health plan was an employee welfare benefit plan governed by ERISA.

98. Defendant was the plan sponsor, plan administrator, and/or COBRA administrator for the group health plan, or otherwise exercised control over the administration of COBRA notices.

99. Plaintiff was a participant in Defendant's group health plan during his employment.

100. Plaintiff had healthcare coverage through Defendant at the time Defendant terminated his employment.

101. Defendant terminated Plaintiff's employment on April 22, 2026.

102. Plaintiff's termination constituted a qualifying event requiring Defendant and/or the plan administrator to provide Plaintiff with timely notice of his right to elect COBRA continuation coverage.

103. Defendant never sent Plaintiff a COBRA election notice.

104. Defendant's failure to provide COBRA election notice violated ERISA and COBRA.

105. Defendant's failure to provide COBRA election notice harmed Plaintiff by depriving him of timely information necessary to elect continuation coverage and protect his health insurance rights.

106. Defendant's failure to provide COBRA election notice was not the result of good-faith administrative error but reflected a failure to comply with Defendant's statutory obligations.

107. Plaintiff is entitled to statutory penalties, equitable relief, attorney's fees, costs, and such other relief as the Court deems just and proper.

WHEREFORE, Plaintiff demands judgment against Defendant for failure to provide COBRA election notice, including statutory penalties, appropriate equitable relief, attorney's fees and costs, interest, and all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury.

Respectfully submitted,

Dated: August 14, 2026

**s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134

Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com